### ARMINGER v. CITY NAT. BANK OF PARIS. (No. 2281.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 28, 1920.)

1. **Sales** ⬄152—**Buyer's failure to give notice of shipments ordered precluded recovery for nondelivery.**

Buyer, having agreed to give seller reasonable notice in advance of all shipments ordered by him, could not without having given such notice, recover for seller's nondelivery.

2. **Compromise and settlement** ⬄24—**Whether seller had agreed that buyer was entitled to specified amount for nondelivery held for jury.**

In buyer's action for nondelivery in which he claimed that there had been an agreed settlement with seller by the terms of which seller was indebted for specified amount, question of whether such settlement had been entered into *held* for jury.

3. **Appeal and error** ⬄1001(1)—**Verdict warranted by evidence not disturbed.**

Verdict warranted by the evidence will not be set aside on appeal.

Error from District Court, Lamar County; A. P. Dohoney, Judge.

Suit by Elmer A. Arminger against the City National Bank of Paris, in which defendant filed a cross-action. Judgment for defendant on its cross-action, and plaintiff brings error. Affirmed.

The plaintiff in error was engaged in the poultry supply business in Chicago. The Paris Box & Manufacturing Company, manufacturing egg cases, was placed in bankruptcy. The City National Bank, a creditor of the manufacturing company, purchased the property of the bankrupt company and operated it in order to sell the property for its debt. On October 12, 1912, the bank and the plaintiff in error executed the following contract:

"This contract is made and entered into by and between the City National Bank of Paris, Tex., and Elmer L. Arminger of Chicago, Ill. by which the said bank agreed to deliver to said buyer fifty carloads of standard 30-dozen 2x16 cottonwood veneer egg cases K. D. ac-

cording to the following description of cases: (Here follows description.) The price to be eleven cents f. o. b. Paris, Tex. Terms are two per cent. discount for cash within ten days from date of shipment. The said Elmer L. Arminger agrees to and does hereby purchase from the City National Bank the fifty cars of egg cases above described and agrees to pay for each shipment within ten days from date of shipment according to above terms, and further agrees to give reasonable notice in advance of all shipments ordered by him, which orders are to be given between the date of this contract and May 1, 1913, at buyer's option. If the car has not arrived at destination inside of the ten days' limit the buyer is to remit twenty-five per cent. of the invoice within ten days and seventy-five per cent. upon the arrival and inspection of goods."

The plaintiff in error brings the suit, alleging that the defendant in error failed and refused to deliver 31 of the 50 carloads of egg cases, as contracted, and on account thereof the plaintiff in error was compelled to purchase elsewhere in the market the 31 carloads of cases at an additional cost of two cents a crate, to his damage in the amount of $2,480. He further alleged that in an accounting between him and the defendant in error in February, 1914, the defendant in error agreed to pay him the said sum of $2,480, less $749 balance due by him to the bank for egg cases delivered under the contract. The suit is to recover the $1,731. The defendant in error denied that it had breached the contract, and alleged that it had shipped out every carload of cases ordered by the plaintiff in error during the life of the contract. It denied that it had promised to pay the plaintiff in error the $1,731 sued for; and by cross-action alleged that in October, 1913, after the termination of the contract, the plaintiff in error and the defendant in error had an accounting and settlement, and that it was agreed that the plaintiff in error was indebted to the defendant in error the balance of $749 which the plaintiff in error promised to pay. The jury returned a verdict in favor of the bank on its cross-action.

The evidence is undisputed that 19 of the 50 carloads of cases were shipped out on orders of and received by the plaintiff in error. Three more carloads were ordered out by the plaintiff in error, but we conclude that the orders for same were canceled by the parties. And we conclude according to the evidence that the plaintiff in error did not direct and order the shipment of any more carloads of cases except the 22 cars above during the life of the contract, and that the defendant in error filled and shipped out all orders for the cases received from the plaintiff in error except the three cars canceled by the parties. The plaintiff in error testified as follows:

"I told my attorney that I had ordered cars of egg cases, that had not been shipped, and

my recollection is that it was three cars ordered and not shipped. Those are the only cars I remember or recall that were ordered and not shipped. I do not remember exactly the first car ordered that the bank failed to ship, but I think it was the Bowling Green car. It is a fact that the car was canceled by me, but it was at their (defendants') request. I did cancel the order for that car after they had requested me to do so. The request to cancel the order for this car came by reason of the fact that there was a matter of two cars that had to be shipped, and they wired back and said they could only ship one; it was impossible for them to ship both. These two cars were not ordered at the same time, I am quite sure of that. I think that the car ordered at the time the Bowling Green car was ordered shipped was to be shipped to Weimer, Tex., and I directed the car to be shipped to Weimer and canceled the Bowling Green order. The next car, as I remember it, was for our house at St. Louis. I did cancel that car, but not after it was en route. It was not en route when I canceled it. I did cancel the order for that car, but it was at their (defendants') request. As to whether I canceled the order for the car and asked that it be reconsigned, we did want it to go to some other point, I think Lampasas. I don't think that car was billed to St. Louis because we issued the order to cancel it. Those are two of the cars that I instanced. I think the third car was for Mexico, Mo. That car was shipped to Mexico, Mo.; and, as to whether it was turned down by our customers and reconsigned, the customer canceled the order to us, and then we reconsigned it to Delmas Junction, Iowa. Those are the only three cars I claim that they had orders in hand for and did not fill the orders."

The testimony for the bank is that the bank filled all orders received from the plaintiff in error during the life of the contract except the three cars canceled by the parties. The contract expired by its terms on May 1, 1913. The evidence admits that there is due the bank by the plaintiff in error the sum of $749. The plaintiff in error testified that he went into the market and bought 31 carloads of egg crates for $2,480, being 2 cents a crate above the contract price. He further testified that in February, 1914, he and the bank had an agreed settlement wherein the bank agreed to pay him the claim of $2,480 as damages less the sum of $749 due the bank, making $1,731. The defendant in error denied any such agreement or accounting, and, on the contrary, claimed that in February, 1913, before the expiration of the contract, the bank and the plaintiff in error had an agreed settlement and there was a balance

due the bank of $749 which the plaintiff in error promised to pay.

Edgar Wright, of Paris, for plaintiff in error.

A. P. Park, of Paris, for defendant in error.

LEVY, J. (after stating the facts as above). The first paragraph of the court's charge reads:

"Under the contract offered in evidence, there was no obligation on the part of the defendant, the City National Bank of Paris, Tex., to ship cars of egg cases until receipt of orders for same from plaintiff, Arminger. The undisputed evidence in the case shows that the defendant filled all of the orders received from the plaintiff under said contract; that is, that the defendant shipped all the cars as ordered except such orders as were canceled."

[1] There was no error, we think, in giving the charge. The written contract stipulated that the plaintiff in error "further agrees to give reasonable notice in advance of all shipments ordered by him, which orders are to be given by him between the date of this contract and May 1, 1913, at buyer's option." This stipulation imposed upon the plaintiff in error the duty, as charged by the court, of notifying the defendant in error to ship out the cars of cases. And we think the uncontradicted evidence shows that, as charged by the court, "the defendant shipped all the cars as ordered except such orders as were canceled." The evidence makes no issue of a breach of the contract by the bank. Assignments of error Nos. 1, 4, and 5, all pertaining to the same question, are overruled.

[2] The second paragraph of the court's charge presents the issue to the jury as to whether or not there had been an agreed settlement between the plaintiff in error and the bank, by the terms of which the defendant in error agreed that there was due to the plaintiff in error the sum of $1,731. The evidence made the issue, and was, we think, correctly submitted to the jury in the wording of the charge. The second and third assignments of error are overruled.

[3] The sixth assignment of error complains of the verdict, on the ground that the evidence does not warrant a recovery in any amount against the plaintiff in error. There is evidence warranting the jury to return the verdict given, and we cannot, as a matter of law, set the same aside.

The judgment is affirmed.